IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KEONTE FURDGE,

                              Plaintiff,

        v.                                                    OPINION and ORDER

CITY OF MONONA, JARED WEDIG,                                  20-cv-846-jdp
and LUKE WUNSCH,

                              Defendants.

---

Plaintiff Keonte Furdge was an overnight guest in a house in a lakeside neighborhood in Monona, Wisconsin. But his presence aroused the suspicions of a neighbor, who called the Monona Police Department to report the suspicious activity of a Black man sitting on the front steps of the house, which she believed to be unoccupied. Police officers went to investigate. Two of them, the individual defendants here, entered the home without a warrant, held Furdge at gunpoint, and handcuffed him. Once they determined that Furdge was in the house with permission, they removed the handcuffs but continued to interrogate him. Ultimately, they apologized and left. Furdge filed this lawsuit alleging violations of his rights under the Fourth Amendment to the Constitution, which prohibits unreasonable searches and seizures.

Both sides move for summary judgment. The interaction between the officers and Furdge was recorded on the officers' body cameras and the material facts are undisputed. The court concludes that the entry into the house and the detention of Furdge was a clear-cut violation of the Fourth Amendment. The officer who led the entry, Jared Wedig, violated clearly established constitutional rights, so he is not entitled to qualified immunity. The second officer, Luke Wunsch, was entitled to rely on Wedig's judgment in entering the home, so he is

liable only for Furdge's continued detention. The court will grant summary judgment to Furdge on his unlawful entry and detention claims.

The case will proceed to trial on Furdge's damages. But the officers' conduct, though wrongful, does not demonstrate malice or a reckless disregard of Furdge's rights. Thus the court will grant summary judgment to defendants on Furdge's claim for punitive damages.

Furdge has abandoned his separate excessive force claim and his claim against the City of Monona. Summary judgment will be granted to the defense on these claims, and the city will be dismissed from the case.

UNDISPUTED FACTS

The parties dispute some of the background facts, but those are not material to the constitutionality of the defendant officers' actions. The following facts are undisputed.

On June 1, 2020, Toren Young moved into 5111 Arrowhead Drive in Monona, Wisconsin. The house was owned by Mark Rundle, Young's former high school football coach. The house had belonged to Rundle's parents who had died about a year earlier. Rundle didn't live at the home, but he kept it well maintained. When Young moved back to Monona from Iowa and needed a place to live, Rundle offered to let him stay in the house for a few months.

The day that Young moved in, he invited his friend, Keonte Furdge, over to the house. Furdge had been laid off from his job and had been living at different friends' homes for the previous two months. Young told Furdge that he could stay with him for a few nights. That night, Furdge and Young caught up, had dinner, and Furdge did his laundry.

The next morning, June 2, Young had a job interview. Furdge walked with Young to Young's car, which was parked in the driveway. Furdge took a phone call on the front patio of

the house. He went back inside, and began folding his laundry while listening to music on headphones.

At 10:47 a.m., a woman called the Monona Police Department's non-emergency line "to report a suspicious activity." Dkt. 26-2 (call recording). She said that her neighbor had "passed away, the house is empty, and now there is an African American with sweatpants, flip flops, and a white shirt sitting [at] the front door." (The caller was apparently the girlfriend of the next-door neighbor, calling while she was leaving the neighborhood.) The dispatcher said that she would send an officer.

The dispatcher entered information about the call into the police department's dispatch system, which transmits entries to officers' squad car computers. The entry stated: "resident[] advising that she saw someone sitting on the front step at 5111 Arrowhead. Caller thinks this is suspicious because the neighbor passed away and the house is vacant. Would like an [officer] to check on the subject." Dkt. 26-1. The dispatcher called defendant officer Jared Wedig on his radio and verbally gave him the same information. Although the initial caller identified the suspicious person's race as African American, the dispatcher did not pass that information along to Wedig.

Wedig arrived at the house about ten minutes later. The complaining caller was no longer at the scene, but her boyfriend, the next-door neighbor, was in his driveway. The neighbor told Wedig that he, too, saw the person on the front patio. The neighbor told Wedig that the house had been vacant for a year, but that Mark Rundle was maintaining it. The neighbor described the person as about six feet tall, in sweatpants, flip flops and a sweatshirt, and said that he had not seen where the person went. The neighbor also told Wedig that a car

had been parked at the property earlier that morning but had left. (Wedig's bodycam did not record audio of this interaction, but it was described in his deposition. Dkt. 20.)

Wedig walked over to the house across the front lawn. Dkt. 24-1. He looked inside the large front window and saw no one inside and nothing suspicious. He walked to the front door. He activated the audio on his bodycam. He didn't knock or ring the doorbell. He opened the storm door, turned the doorknob of the entry door, and opened it a crack. He paused and said into his radio, "I got an open door."

Wedig then pushed the door all the way open, while he remained outside. The door opened into a fully furnished living room. Wedig said, though not loudly, "police department," waited several seconds, and asked "is anyone here?" Wedig heard Furdge's voice coming from inside the house. Wedig said into his radio, "whoever is close come here. We got someone inside the house."

Wedig drew his gun and waited outside the front door, pointing his gun into the house toward the floor while he waited for backup. Twice during that time, Furdge can be heard singing to himself. Furdge didn't know that Wedig was there, and Wedig believed that Furdge was unaware of his presence. Dkt. 20 (Wedig Dep. 50:23–25).

Defendant officer Luke Wunsch arrived at the scene three to four minutes after Wedig. He walked up to the house with his firearm drawn. A third officer, Kevin Schneider, arrived and Wedig waved him to cover the back of the house. Wedig whispered to Wunsch, "the owner died so it should be vacant but he's in the back I can hear him talking." They spoke a bit longer, but their conversation is not fully audible on the bodycam video. Wedig and Wunsch entered the living room with their weapons pointed down the hallway from the living room to the bedrooms of the house.

4

After holding their positions, guns drawn, for about 20 seconds, Wedig announced, "police department come out with your hands up." Furdge said, "huh?" Wedig repeated, "come out with your hands up." Furdge said "ok" and walked slowly out of the hallway and into the living room with his hands up.

Furdge and the officers had the following exchange:

> Wunsch: Come on out here. You don't live here.
>
> Furdge: My coach's house. Coach Rundle. He let me and Toren stay here. You can call and ask him.
>
> Wedig. Ok. For right now just turn around. Put your hands behind your back.
>
> Wunsch: Is it Keonte?
>
> Furdge: Yes, it's Keonte.

Wedig lowered his gun and told Furdge, "put your hands behind your back for a second. We're just going to detain you." Furdge complied, and Wedig handcuffed him. Wunsch also lowered his gun. Furdge asked why he was being detained, and Wunsch replied, "because you don't live here. And the person that lived here passed away." Furdge asked them to call Rundle again. Defendants agreed. The third officer, Schneider, came into the house. Schneider said that he had spoken with another neighbor who said that Furdge was supposed to be living in the home for two months. Wedig removed Furdge's handcuffs, but Furdge was interrogated for ten more minutes. Wunsch stayed behind to talk with Furdge, while Wedig went to explain things to the next-door neighbor, and Schneider tried to confirm with Rundle that Furdge was in the home with consent. Ultimately, Wunsch and Wedig apologized to Furdge and left.

ANALYSIS

A warrantless entry into a home, such as the one committed by the defendant officers here, is presumptively unlawful as a violation of the Fourth Amendment. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Defendants contend, however, that their entry was justified by exigent circumstances, thus falling within one of the recognized exceptions to the warrant requirement. Defendants also contend that they are entitled to qualified immunity from suit. Thus, the main issue before the court is whether the actions of Wedig and Wunsch fit within the exigent circumstances exception.

Summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court evaluates each motion separately, construing the facts and drawing all reasonable inferences from those facts in favor of the nonmovant. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). The material facts are documented and not disputed: the officers' body cameras recorded the interactions among the officers and Furdge, and there are audio recordings of the initial call of the complaining neighbor and the instructions of the dispatcher. The case turns largely on the application of Fourth Amendment doctrine to the undisputed facts. When the facts are undisputed, whether the officers acted within constitutional bounds is a question for the court. *Bell v. Irwin*, 321 F.3d 637, 640–41 (7th Cir. 2003).

**A.  Legitimate expectation of privacy**

The court begins with a threshold issue raised by defendants. The Fourth Amendment applies only in places where one has a legitimate expectation of privacy. *Minnesota v. Olson*, 495

U.S. 91, 95 (1990). An expectation of privacy is legitimate if it is one that society recognizes as reasonable. *Id.* at 95–96 (quoting *Katz v. United States*, 389 U.S. 347 (1967)).

Defendants contend that Furdge had no expectation of privacy because he was merely the guest of a guest, unauthorized by Rundle, the actual owner of the home. Because he had not been authorized by the owner, the argument goes, Furdge had no authority to exclude anyone from the Arrowhead Drive home, and thus no legitimate expectation of privacy.

Defendants' argument cannot be squared with *Olson*'s holding that an overnight guest has a legitimate expectation of privacy in the home of his host. 495 U.S. at 98–99. *Olson* explained that "staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society." *Id.* at 98. People stay in others' homes when they travel, visit each other, and are in between jobs or homes. *Id.* The Court flatly rejected the multifactor test proposed by the State of Minnesota: "We need go no further than to conclude, as we do, that Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Id*. at 96–97.

Defendants contend that Furdge had no legitimate privacy interest because he was in the home temporarily, lacked Rundle's knowledge or consent, didn't keep personal property there, lacked property rights in the home, lacked an understanding of Young's property rights in the home, didn't know the layout of the home, and didn't have a key, among other things. All these details are like those rejected as immaterial in *Olson*. The court concludes that, as Young's overnight guest, Furdge had a legitimate expectation of privacy in the home.

### B. Warrantless entry claim

Because the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," *Payton v. New York*, 445 U.S. 573, 585 (1980), a warrantless search of a home is presumed to violate the Fourth Amendment, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). But there are exceptions to the warrant requirement, including the exigent circumstances doctrine that defendants rely on here. Exigent circumstances allow a warrantless entry to a home if two conditions are met: (1) there is probable cause to believe that a crime is being committed, and (2) exigent circumstances create an urgent need to enter the home before a warrant could be obtained. *Jacobs v. City of Chicago*, 215 F.3d 758, 769 (7th Cir. 2000). Both conditions are contested here.

### 1. Probable cause

Probable cause exists when, based on the known facts and reasonable inferences from those facts, a reasonable officer would believe that there is a fair probability that a crime has been or is being committed. *Safford Unified School Dist. No. 1 v. Redding,* 557 U.S. 364, 370 (2009). Probable cause is a flexible concept rooted in the common-sense interpretation of the totality of the circumstances known to the officers at the time the event occurred. *United States v. Ellis,* 499 F.3d 686, 689 (7th Cir. 2007). Whether probable cause exists is an objective question, based on the assessment of the hypothetical reasonable officer. *Richardson v. Bonds*, 860 F.2d 1427, 1431 (7th Cir. 1988). The subjective beliefs of the officer at the scene are immaterial. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013).

Here's what Wedig knew when he entered the home: The next-door neighbor had reported that no one lived at the home, but the owner was still maintaining it. It was broad daylight on a sunny June morning. Earlier that morning, a car had been parked in the driveway,

but it was now gone. A young man, dressed in sweatpants and flip-flops and unfamiliar to the neighbor, had been on the front patio talking on the phone, but he was now gone. There were no signs a break-in or anything else suspicious. The front door was unlocked. After Wedig pushed the door open, he heard a voice inside the house, so at this point he knew that someone was inside.

Defendants contend that, at that point, Wedig had probable cause to believe that a crime was being committed—burglary or at least criminal trespass. Furdge concedes that Wedig had a reasonable basis to believe that a person was in the home without permission. But a burglary requires not only entry but also the intent to steal or commit a felony. Wis. Stat. § 943.10(1m). Intentional entry into a premise without consent alone is insufficient to infer a burglary. *Raymond v. State*, 55 Wis. 2d 482, 487, 198 N.W.2d 351, 353 (1972). Nothing about the additional circumstances suggested burglary, and several facts made that prospect very unlikely: there was no evidence of a break-in, there was no car available for escape, and it was broad daylight with neighbors around. The unfamiliar person was not reported to be acting suspiciously; he wasn't trying to hide his presence on the property, and he casually took a phone call on the patio as if he had a right to be there. As for criminal trespass, it requires circumstances tending to provoke a breach of the peace, Wis. Stat. § 943.12(12), and nothing suggested that tendency.

Before a warrantless entry, an officer must pursue reasonable avenues of investigation, especially when it is unclear whether a crime has even occurred. *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (warrantless arrest was unreasonable where officer failed to collect easily obtained information necessary to establish that parents intentionally neglected their child); *United States v. Struckman*, 603 F.3d 731, 746 (9th Cir. 2010) (warrantless arrest was

unreasonable where "probable cause could easily have been dissipated by minimal inquiry at the outset"). Before leaping to the conclusion that a burglary was ongoing, Wedig could have spoken to other neighbors (as officer Schneider actually did), attempted to contact Rundle, or even rung the doorbell and asked Furdge why he was there. He did none of these things, relying instead on a single source of information which he did nothing to verify. An application for a warrant to enter and search the house based on the information known to Wedig and in light of his limited investigation would have been laughable.

*Reardon v. Wroan*, 811 F.2d 1025 (7th Cir. 1987), provides a useful point of comparison that shows that Wedig clearly lacked probable cause. In *Reardon*, the district court had decided on summary judgment that a warrantless, guns-drawn entry into a fraternity house was justified under the exigent circumstances doctrine, based on the officers' belief that a burglary was in progress. The court of appeals reversed, holding that the existence of probable cause depended on disputed facts, and under plaintiffs' view of the facts, the officers lacked probable cause. The undisputed facts were that officers had received a report at 6:45 p.m. of a "burglary in process" at a fraternity house during the university's winter break, when students were gone and burglaries on campus were frequent. *Id*. at 1026. There were no signs of forced entry; a back door was unlocked. There was a single car in the parking lot. According to plaintiffs, whose evidence the court of appeals credited for purposes of review, the car was parked normally and there were lights on in the fraternity house. The court of appeals held that a reasonable jury could conclude on these facts that the officers lacked probable cause.

Compared to Wedig, the officers in *Reardon* had a much stronger basis for a belief that a burglary was underway. They were responding to a reported burglary, during a holiday break when burglaries were common in the area, and during a time of day in which darkness would

10

facilitate a burglary. And yet the court of appeals held that these facts were not enough to establish probable cause in light of the additional facts supporting the opposite inferences.

Wedig had nothing close to the information known to the *Reardon* officers. The court concludes that Wedig lacked probable cause to believe that a crime was underway.

### 2.  Exigent circumstances

Even if Wedig had probable cause, his entry would not be lawful in the absence of exigent circumstances. Exigent circumstances exist when there is a pressing and immediate need for law enforcement to enter a home, but no time to secure a warrant. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 557 (7th Cir. 2014). Recognized exigencies include an immediate threat to the safety of a person in the building, hot pursuit of a fleeing suspect, or the imminent destruction of evidence. *Id.* (collecting cases). Whether the exigent circumstances exception justifies a warrantless entry is judged by an objective standard: courts ask whether it was reasonable for officers to believe, in light of the circumstances they faced, that there was a compelling need to act and no time to obtain a warrant. *Id.*

Generally, the bare fact that police suspect an ongoing crime, without facts suggesting a specific emergency, is not an exigent circumstance. *See Jacobs v. City of Chicago*, 215 F.3d 758, 770 (7th Cir. 2000) (that officers were executing a search warrant for narcotics is not sufficient to constitute exigent circumstances, specific facts indicating the likely destruction of evidence must be present for an exigency to exist); *see also Hawkins v. Mitchell*, 756 F.3d 983, 993 (7th Cir. 2014) (the "ordinary investigation of possible crime" is not an exigency). But an ongoing burglary might pose an exigency, if the circumstances suggest a risk to safety or the loss of a suspect. *Reardon,* 811 F.2d at 1026; *Leaf v. Shelnutt*, 400 F.3d 1070, 1081–82 (7th Cir. 2005).

11

For exigent circumstances, defendants rely simply on the possible "ongoing burglary of a vacant home." Dkt. 27. *Leaf* provides a useful point of comparison on whether exigent circumstances justify warrantless entry in response to a burglary. In *Leaf*, police received a late-night 911 hang-up call. When officers responded to the caller's address, the caller told police that he had seen a person breaking into an apartment. 400 F.3d at 1074. The caller told police that when the caller confronted the person, the person was belligerent and said that the apartment was his. *Id.* When police arrived at the apartment, they found a broken window and open patio door. *Id.* The court concluded that exigent circumstances supported officers' warrantless entry into the home because the facts supported a reasonable belief that "a burglary was occurring and people inside the apartment were in danger." *Id.* at 1081–82. *See also United States v. Tibolt*, 72 F.3d 965, 970 (1st Cir. 1995) (exigent circumstances existed when a home burglar alarm went off and the residents didn't answer a phone call from the security company; without entering, the officer could not have known if an intruder was in the home harming its residents.)

For the reasons explained above, Wedig lacked probable cause to believe that a burglary was under way. And criminal trespass, a misdemeanor, is not a serious crime that would warrant entry under the exigent circumstances doctrine. *Hawkins*, 756 F.3d at 992. But even if a burglary had been under way, the circumstances known to Wedig did not warrant immediate entry. The home was reported to be unoccupied, so there was no imminent risk to any occupants, and Wedig understood that the suspect, Furdge, was the only one in the home. There was no evidence of a break-in or any damage to the property. And, critically, there was no risk of the suspect escaping because it was broad daylight, there was no car available for escape, and three officers had the house covered. The most dangerous course of action was the

one actually taken by Wedig and Wunsch: they entered the home unannounced with guns drawn. Their actions escalated the danger by risking a violent confrontation with a surprised suspect. *Green v. Butler*, 420 F.3d 689, 698 (7th Cir. 2005) (recognizing the substantial inherent danger of no-knock entry).

Truly exigent circumstances might sometimes justify a no-knock entry. But Furdge contends that because those circumstances were not present here, the no-knock entry compounds the unreasonableness of the officer's actions. The common-law "knock and announce" rule requires a law enforcement officer "to announce his presence and authority" before entering a home, with or without a warrant. *Leaf,* 400 F.3d at 1082. To justify a no-knock entry, officers must have reasonable suspicion that that knocking and announcing their presence would be dangerous, futile, or prompt the destruction of evidence. *Id.* Compliance with the requirement forms part of the reasonableness inquiry under the Fourth Amendment. *Id.* at 1083. Defendants point to no facts supporting a reasonable suspicion that knocking and announcing would have been dangerous or futile. And there was no risk of flight, because the house was covered by three officers. The court agrees that the failure to knock an announce is yet another factor demonstrating the unreasonableness of the warrantless search.

The court concludes the analysis of exigent circumstances by addressing one final defense argument. Defendants contend that their warrantless entry was permissible under the protective sweep exception to the warrant requirement. The doctrine allows a quick, cursory, and limited search of a premise for safety purposes without a warrant. *Maryland v. Buie*, 494 U.S. 325, 327 (1990). A protective sweep need only be supported by a reasonable belief that the area to be swept may harbor a person who poses a threat. *Id.* at 353. In some situations, officers may enter a home to conduct a protective sweep. *United States v. Henderson*, 748 F.3d

13

788, 792 (7th Cir. 2014) (officers' warrantless entry into a home to conduct a protective sweep after defendant was lawfully arrested outside did not violate the Fourth Amendment where facts suggested a hostage situation and risk of an ambush). But a protective sweep is available only once the officers are lawfully on the premises or making a lawful arrest. *See id.; Leaf*, 400 F.3d at 1087. Here, defendants were not lawfully in the home, and the bodycam video shows that no one was in the living room. The protective sweep principle does not justify their entry into the house. The court concludes defendants lacked exigent circumstances to enter the home without a warrant.

## C. Unlawful seizure claim

Furdge contends that Wedig and Wunsch also violated his constitutional rights by detaining him. A Fourth Amendment seizure of a person occurs when officers, through physical force or a show of authority, restrain a person's liberty. *Hawkins*, 756 F.3d at 992. An arrest is reasonable if it is supported by probable cause. *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020). A brief detention for investigatory purposes is reasonable if supported by the less stringent standard of reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). A reasonable suspicion is more than a hunch, but less than probable cause, and much less than a preponderance of the evidence. *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011).

Furdge concedes that the defendant officers had a reasonable basis to believe that he was in the house without authorization, based on the report of the next-door neighbor. But for the reasons explained above, the officers had no reason to suspect an ongoing crime, which required more than unauthorized access. And once defendants entered the home, no new facts emerged to support a suspicion that crime was afoot. To the contrary, any new facts after the officers entered the home suggested that Furdge was there lawfully. He was calm and

cooperative. He behaved like he was staying in the home. He wasn't fully dressed, wearing a white undershirt, sweatpants, and flip flops. And Furdge immediately told defendants, "My coach's house. Coach Rundle. He let me and Torin stay here. You can call and ask him." No reasonable officer would reasonably suspect that Furdge was burglarizing the home or committing any other crime. Furdge's detention was not supported by a reasonable suspicion and was thus unlawful.

## D. Wunsch's liability

The court's analysis has so far focused on Wedig because he made the decision to enter the home. Furdge concedes, Dkt. 30, at 26, that Wunsch would have been entitled to rely on Wedig's assessment of the situation. *See Hawkins*, 756 F.3d at 994. But, Furdge argues, once Wunsch recognized Furdge and heard the explanation that Rundle had agreed to let Toren stay in the house, both officers should have realized that there were no exigent circumstances, and that their entry was no longer lawful. But they continued to interrogate Furdge for another ten minutes. Furdge had been detained at gunpoint and in handcuffs, and the officers who did so instructed him to stay put while they checked out his story. A reasonable person in Furdge's position would not believe that he was free to leave, which means that Furdge was still detained. *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010). At that point, Wunsch would have known that there were no exigent circumstances that warranted their presence in the house or Furdge's continued detention, and he should have paused to consider why they were still there. *Hawkins*, 756 F.3d at 994. As Wunsch later acknowledged, "that would be like Mark to let both these guys stay here." Dkt. 25-1 (Wunsch bodycam recording). The court agrees that Wunsch violated Furdge's constitutional rights by remaining in the home once Furdge explained how he came to be there.

### E.  Qualified immunity

The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *Mullenix v. Luna,* 577 U.S. 7, 11 (2015). Qualified immunity applies unless it would be clear to any reasonable official that what he was doing violated the right in question. *Id*. A right is clearly established if: (1) there is a "closely analogous case" holding that the specific type of conduct at issue violated the Fourth Amendment; or (2) "a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct in question." *See Cibulka v. City of Madison,* 992 F.3d 633, 639–40 (7th Cir. 2021) (internal quotation marks and alterations omitted).

The court is persuaded that *Reardon* provides a closely analogous case. An analogous case does not have to present the identical factual situation, but it must put the statutory or constitutional question beyond debate. *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). The *Reardon* court held that the qualified immunity defense would not apply to officers who entered the fraternity house without a warrant after they responded to a report of an active burglary, but found a normal scene when they arrived. *Reardon*, 811 F.2d at 1030. The court concluded that, under the facts and circumstances as presented by plaintiffs, the officer's actions could be found to be objectively reasonable. *Id.* Reardon makes clear that a report of an ongoing burglary is not by itself sufficient to establish probable cause. If a report of an ongoing burglary is not sufficient, then any reasonable officer would understand that the mere presence of an unauthorized person in an unoccupied residence could not possibly supply probable cause to believe a crime was ongoing.

16

The court is also persuaded that general and settled constitutional principles obviously applied to defendants' actions. At the time defendants entered the home, it was long ago clearly established "that an officer cannot conduct a warrantless search of a residence unless he has probable cause to believe that there is illegal activity occurring in that particular residence and exigent circumstances are present." *Jacobs v. City of Chicago*, 215 F.3d 758, 771 (7th Cir. 2000) (citing *Welsh v. Wisconsin*, 466 U.S. 740, 748–50 (1984)). The law made clear that exigent circumstances justified a warrantless enter a home without a warrant to protect an occupant from imminent injury, prevent the destruction of evidence, or continue hot pursuit of a fleeing suspect. *Sutterfield*, 751 F.3d at 557. And it was clearly established that an officer must knock and announce his presence before entering a residence, unless the circumstances make knocking dangerous, futile, or could lead to destruction of evidence. *Leaf*, 400 F.3d at 1083.

Under the circumstances here, no reasonable officer could have concluded that it was constitutionally permissible to enter a home without a warrant, when the available facts suggested merely unauthorized presence in the home, but no criminal activity and no emergency need to enter the home. No reasonable officer would have believed that an active burglary was taking place, or that entry was necessary to protect an occupant from injury, to prevent a suspect from fleeing, or prevent evidence from being destroyed. Wedig, the officer who made the decision to enter the home is not entitled to qualified immunity for the warrantless entry. But Wunsch is so entitled, because he reasonably relied on Wedig's assessment that the circumstances warranted entry.

Furdge's detention was similarly unlawful beyond reasonable argument. An officer is entitled to qualified immunity on an unlawful seizure claim if arguable reasonable suspicion or arguable probable cause existed to detain the plaintiff. *Fleming v. Livingston County, Illinois*, 674

F.3d 874, 878 (7th Cir. 2012). Wedig and Wunsch had a reasonable basis to suspect that Furdge was in the home without authorization, but they had no arguable basis to suspect a crime. And everything they learned after their entry into the house should have dissipated any suspicion of criminal activity. Neither Wedig nor Wensch are entitled to qualified immunity for Furdge's detention after Furdge explained how he came to be in the home.

## F.  Punitive Damages

Furdge seeks punitive damages, which are appropriate only if defendants' conduct was motivated by evil intent, or involves reckless or callous disregard of Furdge's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Defendants move for summary judgment on Furdge's claim for punitive damages.

There is no evidence that defendants acted maliciously or with evil intent. Wedig made an unarguably unreasonable assessment of his authority to enter the home. But unreasonable conduct is the hallmark of negligence, and an award of punitive damages requires a more culpable state of mind. Punitive damages are not automatically available whenever the assertion of qualified immunity is denied. *McCardle v. Haddad*, 131 F.3d 43, 53 (2d Cir. 1997).

Furdge doesn't have much to point to for bad faith on the part of the officers. Furdge says that Wedig failed to relay by radio that it was he who opened the front door of the house. Dkt. 36, at 27. Furdge argues that a jury could find this to be tantamount to a lie. But Wedig's radio report was that he had an "open" door, which could just as well mean "unlocked" as standing open. No reasonable jury could find this to be a lie, let along one serious enough to show callous disregard of Furdge's rights.

The officers' conduct here demonstrates a good-faith effort to protect the community by investigating what that they believed, however wrongly, to be a possible crime. They treated

18

Furdge calmly and with respect, even as they overstepped their legal authority. The consequences of the officers' unwarranted, guns-drawn, no-knock entry could have been disastrous. It was surely deeply disturbing to Furdge, and he is entitled to ask for compensation for his distress. But no reasonable jury could conclude, from the evidence now before the court, that the officers intentionally or recklessly violated Furdge's constitutional rights. The court will grant summary judgment to defendants on the issue of punitive damages.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for partial summary judgment, Dkt. 29, is GRANTED.

2. Defendants' motion for summary judgment, Dkt. 23, is GRANTED in part and DENIED in part. Defendants' motion is granted with respect to plaintiff's unnecessary force claim against both individual defendants, plaintiff's claim for unlawful entry against Luke Wunsch, plaintiff's claim against the City of Monona, and plaintiff's entitlement to punitive damages. Defendants' motion is denied in all other respects.

3. Defendant City of Monona is DISMISSED from the case.

Entered February 16, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge